UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARCUS L.,[1]

                  Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

DECISION & ORDER

20-CV-0167MWP

**PRELIMINARY STATEMENT**

        Plaintiff Marcus L. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 10).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 7, 8). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

I.  **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 23, 2014, the application date. (Tr. 23).[2] At step two, the ALJ concluded that plaintiff had the following medically determinable impairments: degenerative disc disease, affective disorder, anxiety disorder, and polysubstance use disorder (in reported partial submission). (*Id.*). Of these medically determinable impairments, however, the ALJ determined that none were severe because none of them, alone or in combination, significantly limited (or was expected to significantly limit) plaintiff's ability to perform basic work-related activities for twelve consecutive months. (Tr. 24). Accordingly, the ALJ ended the sequential analysis at step two and found that plaintiff was not disabled. (Tr. 28).

III.    **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that he was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 7, 9). Plaintiff's principal argument is that the ALJ erroneously found that none of his medically determinable

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

impairments were "severe" at step two of the sequential analysis. (Docket # 7 at 10-29). He also maintains that the ALJ's credibility analysis was flawed. (*Id.* at 29-30).

IV.  **Analysis**

  A.  **The ALJ's Step Two Determination**

I turn first to plaintiff's contention that the ALJ erred at step two. (*Id.* at 10-29). As support, plaintiff puts forth several arguments, including that the ALJ's step two determination is contradicted by medical opinions in the record, based upon a mischaracterization of the record evidence, and based upon an incomplete record. (*See generally id.*; Docket # 9 at 1-9). For the reasons stated below, I agree that the ALJ's step two severity determination as it relates to plaintiff's mental health impairments was erroneous and requires remand.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(a)(4)(ii), (c). "'Basic work activities' are the 'abilities and aptitudes necessary to do most jobs,' and they include physical, postural and sensory functions, as well as mental functions like understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting." *Ferry v. Saul*, 2020 WL 6699520, *2 (W.D.N.Y. 2020) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). It is the claimant's burden to present evidence demonstrating severity at step two. *See Briggs v. Astrue*, 2011 WL 2669476, *3 (N.D.N.Y.), *report and recommendation adopted*, 2011 WL 2669463 (N.D.N.Y. 2011).

Plaintiff's burden at step two "is not . . . heavy." *Lockwood v. Comm'r of Soc. Sec.*, 2020 WL 880796, *2 (W.D.N.Y. 2020). Indeed, it is well-settled that "the standard for a finding of severity under [s]tep [t]wo of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)); *accord O'Connor v. Saul*, 2020 WL 1242408, *3 (W.D.N.Y. 2020) ("[t]he standard at step two is quite low"). The Second Circuit recently reiterated that "[a] claim may be denied at step two only if the evidence shows that the individual's impairments . . . do not have more than a minimal effect on the person's physical or mental abilit[ies] to perform basic work activities." *Schafenberg v. Saul*, 2021 WL 2550815, *1 (2d Cir. 2021) (summary order) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, *3 (1985)). "If such a finding is not *clearly established by medical evidence*[,] . . . adjudication must continue through the sequential evaluation process." *Id.* (emphasis in original) (quoting SSR 85-28, 1985 WL 56856 at *3).

Here, in assessing the severity of plaintiff's multiple medically determinable mental health impairments – affective disorder, anxiety disorder, and polysubstance use disorder (in reported partial submission) – the ALJ considered the four broad categories of mental functioning. (Tr. 23, 26). Specifically, the ALJ determined that plaintiff had "no limitation[s]" understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace, and had "a mild limitation" in his ability to adapt or manage himself. (Tr. 26-27). In reaching these determinations, the ALJ cited plaintiff's own testimony, the (rather limited) medical record, as well as portions of the medical opinions of consultative psychologist Janine Ippolito, PsyD, and non-reviewing state agency consultant C. Butensky, PhD. (Tr. 26-28). Because, in the ALJ's view of the record, plaintiff's mental health

impairments caused no more than "mild" limitations in these functional areas, the ALJ concluded that plaintiff's mental health impairments were "nonsevere." (Tr. 28 (citing 20 C.F.R. § 416.920a(d)(1) ("[i]f [the Commissioner] rate[s] the degrees of [claimant's] limitation [in the four functional areas] as 'none' or 'mild,' [the Commissioner] will generally conclude that [claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities"))).

After reviewing the record and the ALJ's decision, I do not find that the ALJ's severity determination at step two is supported by substantial evidence. *See Latta v. Comm'r of Soc. Sec.*, 2020 WL 4904948, *2 (W.D.N.Y. 2020) ("[a]n ALJ's decision at step two that an impairment is not severe must be 'supported by "substantial evidence" in the record as a whole'") (quoting *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)). In my view, the ALJ did not appropriately consider the medical opinions of Drs. Butensky and Ippolito, which were the only opinions in the relatively short record that assessed the functional limitations associated with plaintiff's mental health impairments. As explained below, these opinions at least suggest that plaintiff's mental health impairments caused "more than a minimal effect on [his] . . . mental abilit[y] to perform basic work activities." *Schafenberg v. Saul*, 2021 WL 2550815 at *1. Remand is thus required for the ALJ to reconsider this opinion evidence.

On February 19, 2015, Dr. Ippolito conducted a psychiatric consultative evaluation of plaintiff. (*See* Tr. 259-63). At the time of that examination, plaintiff reported that he could not work due to marijuana, alcohol, and cocaine dependence. (Tr. 259). As far as his psychiatric history, plaintiff denied any prior psychiatric hospitalizations, but stated that since September 2014 he had been receiving counseling and medication management twice per month at Mid-Erie Treatment and Counseling Services ("Mid-Erie") and received substance abuse

counseling at that clinic twice per week. (*Id.*). Though his treatment was helpful in managing his symptoms, he continued to experience symptoms and reported that he had been diagnosed with post-traumatic stress disorder ("PTSD"), anxiety, and depression. (*Id.*). Plaintiff's impairments caused him to have trouble sleeping. (Tr. 260). He also exhibited depressive symptomology, which reportedly began in 1994, and which included fatigue, low energy, feelings of not wanting to get out of bed, as well as social withdrawal. (*Id.*). In addition, plaintiff had anxiety-related symptomology, which included excessive apprehension and worry, nervousness, hypervigilance, discomfort when people stood behind him or when he was behind closed doors, nightmares and flashbacks related to a history of violence, and anxiousness in large crowds of people. (*Id.*). Plaintiff also reported short-term memory deficits and concentration difficulties. (*Id.*). With respect to plaintiff's drug and alcohol history, he reported that he had not consumed alcohol for five months but had recently used marijuana and cocaine for the first time in five months; he also stated that he attended AA meetings about three times per week, in addition to his outpatient counseling at Mid-Erie. (*Id.*).

Dr. Ippolito's mental status examination of plaintiff was largely unremarkable, although plaintiff exhibited dysphoric affect and dysthymic mood, and Dr. Ippolito noted that plaintiff's recent and remote memory skills were "[m]ildly impaired due to some distractibility." (Tr. 261). Dr. Ippolito diagnosed plaintiff with major depressive disorder, recurrent, moderate, PTSD, polysubstance dependence/abuse, in partial remission, by report, and also noted that plaintiff reported a medical diagnosis of bronchitis. (Tr. 262). She opined that plaintiff had "no evidence of limitations" with regard to his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. (*Id.*). Plaintiff

had "moderate limitations," however, making appropriate decisions, relating adequately with others, and appropriately dealing with stress, which was due to plaintiff's "current emotional distress and history of substance abuse." (*Id.*). In Dr. Ippolito's view, "the results of the present evaluation appear[ed] to be consistent with psychiatric and substance abuse problems, but in itself . . . d[id] not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis." (*Id.*). Dr. Ippolito opined that plaintiff's prognosis was "fair with continued mental health and substance abuse treatment." (Tr. 263).

Dr. Butensky's April 22, 2015 review of the record is consistent with portions of Dr. Ippolito's opinion. Specifically, Dr. Butensky opined that although plaintiff's affective disorder and anxiety disorder were "non severe," plaintiff's alcohol and substance addiction disorders were "severe," and that these three mental health impairments, taken together, caused "moderate" difficulties in maintaining social functioning.³ (Tr. 96). While plaintiff primarily had a chemical dependency impairment, Dr. Butensky also indicated that plaintiff had a "mild to moderate comorbid psychiatric impairment," which together caused plaintiff to have "mild *to moderate* limitations in his ability to sustain attention and concentration, adapt to changes in a routine work setting, and interact appropriately with coworkers and supervisors." (Tr. 97 (emphasis supplied)). Dr. Butensky completed a mental RFC assessment in which he opined that plaintiff was limited in his ability to have sustained concentration and persistence, such that he was "[m]oderately limited" in his ability to work in coordination with or in proximity to others without being distracted by them and complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without

---

³ Plaintiff maintains that it is unclear that Dr. Butensky, as opposed to the single decision-maker, authored this portion of the opinion. (Docket # 9 at 6). Because Dr. Butensky's opinion makes clear that he assessed limitations based upon both plaintiff's substance abuse and his comorbid psychiatric impairment, the question whether this portion was drafted by Dr. Butensky or the single decision-maker is immaterial to the analysis.

an unreasonable number and length of rest periods. (Tr. 99-100). In Dr. Butensky's view, plaintiff also had "[m]oderate[] limit[ations]" interacting appropriately with the general public and accepting instructions and responding appropriately to criticism from supervisors. (Tr. 100). Finally, Dr. Butensky opined that plaintiff had limitations in his ability to adapt to certain situations and was "[m]oderately limited" in his ability to respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. (*Id.*).

The ALJ assigned "partial weight" to both of these opinions (Tr. 27-28), but by ending his analysis at step two, the ALJ clearly rejected all the moderate limitations assessed by Drs. Butensky and Ippolito. Indeed, "[w]hile a mental impairment rated as 'none' or 'mild' generally will not qualify as 'severe,' those rated as 'moderate,' 'marked,' or 'extreme' will qualify as 'severe' under step two, thus requiring the [ALJ] to proceed to the third step in the sequential process." *Schafenberg*, 2021 WL 2550815 at *1 (citing 20 C.F.R. § 404.1520a(c)(4)-(d)(1)); *accord Cote v. Colvin*, 2015 WL 7871169, *8 (D. Or. 2015) ("[m]oderate limitations are frequently consistent with the presence of a severe mental impairment"). Review of the record, however, demonstrates that the ALJ's evaluation of these opinions was based upon several mischaracterizations of the record, rendering the ALJ's step two determination unsupported by substantial evidence.

First, the ALJ failed to recognize that the "mild to moderate" limitations assessed in Dr. Butensky's opinion accounted for plaintiff's medically determinable mental health impairments – both his substance abuse and his comorbid psychiatric impairment – considered together. (Tr. 96-97). Rather, the ALJ appears to have rejected the opinion based upon his mistaken belief that the limitations assessed solely related to plaintiff's substance abuse – an

impairment which the plaintiff asserted was no longer ongoing, and which the ALJ concluded was not severe. (Tr. 27-28).

In doing so, the ALJ appears to have overlooked critical aspects of Dr. Butensky's opinion that would have been favorable to plaintiff at step two, as he did not mention the moderate limitations assessed by Dr. Butensky at all. Such limitations generally are inconsistent with the ALJ's severity conclusion, and the ALJ's failure to address them renders his step two determination unsupported by substantial evidence. *See Wright v. Barnhart*, 2006 WL 4049579, \*14 (D. Conn. 2006) (ALJ's determination that plaintiff's mental health impairment was not severe at step two was not supported by substantial evidence where, among other things, plaintiff's licensed clinical social worker assessed psychological problems that caused plaintiff "slight to *moderate* restrictions in her ability to maintain attention and concentration"; "under the regulations, a mental impairment is considered 'not severe' only if the claimant's degree of limitations in terms of activities of daily living, social functioning, and concentration, persistence or pace is 'none' or 'mild'[;] . . . [h]ere, however, [p]laintiff showed a slight to *moderate* restriction in her ability to maintain concentration and attention, which is greater than 'mild'[;] [t]hus, the [c]ourt finds that the ALJ erred in finding that [p]laintiff's mental impairment was 'non-severe' at step two in his evaluation process") (emphasis in original); *Bennett v. Barnhart*, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003) ("[a] 'moderate' limitation of social functioning, under the Commissioner's regulations, would suggest a mental impairment that is 'severe' in nature").

Similarly, with respect to Dr. Ippolito's opinion, I agree with plaintiff that the ALJ's rejection of the assessed moderate limitations was also based on several mischaracterizations of the record. (*See* Docket # 7-1 at 15-16). In weighing the opinion, the

11

ALJ stated that Dr. Ippolito "opined that [plaintiff] did not appear to have any significant functional limitations linked to" plaintiff's diagnoses. (Tr. 27). The ALJ also reasoned that Dr. Ippolito's opined "'moderate' limitations reflected [plaintiff's] emotional state following a one-time examination (a state that has since proven stable without treatment), and related to a *history* of substance abuse which does not appear to be ongoing, either." (*Id.* (emphasis in original)). The ALJ concluded that Dr. Ippolito's opinion "generally point[s] to a nonsevere impairment," a conclusion which was also supported, in the ALJ's view, by the "paucity of subsequent mental health treatment, including [plaintiff's] testimony regarding his unwillingness to pursue mental health treatment." (*Id.*; *see also id.* ("[o]verall, [plaintiff] is not looking for mental health treatment (per his testimony) and all treatment stopped in February 2016, supporting [the ALJ's] finding that [plaintiff's] mental health impairments are not severe")).

As an initial matter, the ALJ did not cite evidence supporting his observation that plaintiff's emotional state "has since proven stable without treatment." (Tr. 27). Indeed, some of plaintiff's testimony at the August 4, 2017 administrative hearing contradicts this assertion. Specifically, plaintiff testified that he continues to suffer from PTSD, anxiety, depression, and panic attacks, which stem from being around crowds and which occur "at least twice a week," and has frequent thoughts of hurting himself. (Tr. 55-58). He also testified that his mental health impairments, particularly his difficulty being around others, "somewhat" affect his ability to attend group therapy sessions (Tr. 56-57) and would impact his ability to work (Tr. 59-60). This testimony appears consistent with Dr. Butensky's opinion that plaintiff had "moderate" limitations regarding his ability to maintain social functioning, as well as Dr. Ippolito's opinion that plaintiff was moderately limited in his ability to relate adequately with others. (*See* Tr. 96, 262).

Moreover, I do not read plaintiff's hearing testimony to suggest that he was "unwilling[] to pursue mental health treatment" or that plaintiff was "not looking for mental health treatment." (Tr. 27). The record demonstrates that plaintiff sought periodic, although not consistent, treatment for his mental health and substance use impairments since September 2014, at which time he was admitted to Stutzman Addiction Treatment Center for cocaine dependence and dysthymic disorder. (Tr. 255-57). At times throughout 2014 and 2015, plaintiff also received medication management and counseling services at Mid-Erie. (*See* Tr. 259, 270-318). In addition, at least in early 2016, plaintiff established care at Williamsville Psychiatry. (*See* Tr. 384-90). Treatment at Williamsville Psychiatry extended at least through March 2016 (*see* Tr. 384-85), which contradicts the ALJ's statement that "all" of plaintiff's treatment stopped in February 2016 (*see* Tr. 26, 27). Furthermore, at the hearing, plaintiff's counsel notified the ALJ of plaintiff's "recent appointment for mental health services" at Lakeshore Behavioral Health (Tr. 36), which the ALJ acknowledged (Tr. 61). When asked by the ALJ what he had been doing over the last several years to address his mental health issues, plaintiff stated that he had "been going to programs, mental health programs," through which he had received "medication," but that his "insurance w[ould] change and . . . [he would] have to go try to find another place" to receive treatment. (*Id.* ("just been difficult trying to get it together these last couple of years really with the insurance and all that[;] [c]ertain people take your insurance[;] . . . it's an insurance thing for me")). In my view, this treatment history, while not steady, does not evince an "unwillingness" to pursue treatment, nor does plaintiff's desired treatment from Lakeshore Behavioral Health support the ALJ's assertion that plaintiff was not looking for treatment. (*See* Tr. 43 (plaintiff testifying he was "in the process" of seeking mental health and substance use help from Lakeshore)). The ALJ thus erred in weighing Dr. Ippolito's opinion by relying on

these several mischaracterizations of the record. *See Seignious v. Colvin*, 2016 WL 96219, *4 (W.D.N.Y. 2016) ("the ALJ may not ignore or mischaracterize evidence of a person's alleged disability"); *King v. Colvin*, 2016 WL 1398987, *4 (W.D.N.Y. 2016) ("[w]here an ALJ mischaracterizes the evidence or relies on only the portions of the record that support a conclusion of 'not disabled,' a remand is necessary").

For these reasons, I am not convinced that plaintiff's case is among those "very weakest [of] cases" that should be "screen[ed] out" at step two. *McIntyre v. Colvin*, 758 F.3d at 151. Considering the ALJ's errors discussed above in weighing the opinion evidence in the record and plaintiff's testimony, the medical evidence does not "clearly establish[]" that plaintiff's mental health impairments cause no "more than a minimal effect on [his] . . . mental abilit[y] to perform basic work activities." *Schafenberg*, 2021 WL 2550815 at *1. Accordingly, I cannot conclude that the ALJ's error at step two and failure to proceed further in the sequential process was harmless. *See, e.g.*, *O'Connor v. Saul*, 2020 WL 1242408 at *3 ("[a]n ALJ, though, cannot properly deny a claim at step two . . . unless the medical evidence 'clearly' indicates that the claimant's impairments, when combined, are not severe"); *see also* SSR 85-28, 1985 WL 56856 at *4 ("[g]reat care should be exercised in applying the not severe impairment concept[] [and] [i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the nonsevere evaluation step[;] [r]ather, it should be continued"). Remand for reevaluation of these medical opinions and proper characterization of plaintiff's testimony at step two is thus warranted.[4]

---

[4] In remanding this case due to an erroneous step two determination, the Court "take[s] no position as to whether [plaintiff] has satisfied the remaining steps in the sequential analysis, which must be determined in the first instance by the ALJ." *Schafenberg*, 2021 WL 2550815 at *2.

### B. Plaintiff's Remaining Contentions

In light of my findings discussed above that the ALJ erred in evaluating plaintiff's mental impairments at step two, I do not reach plaintiff's remaining contentions. *See, e.g., Lockwood v. Comm'r of Soc. Sec.*, 2020 WL 880796 at *2 ("[b]ecause the [c]ourt agrees with [p]laintiff's third argument [that the ALJ failed to conclude that plaintiff's impairments were severe at step two], [the court] declines to address [plaintiff's other two arguments]"). On remand, however, I urge the ALJ and plaintiff's counsel to ensure that the record is fully developed with respect to all plaintiff's impairments, both physical and mental.

### CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                    *s/Marian W. Payson*
                                                    MARIAN W. PAYSON
                                                 United States Magistrate Judge

Dated: Rochester, New York
        September 16, 2021